# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

MARK HENDERSON                                                                      PLAINTIFF
ADC #78763

V.                              No. 5:19CV00074-BSM-JTR

JAMES SHIPMAN, Warden                                                               DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction

Plaintiff Mark Henderson ("Henderson") is a prisoner in the Varner Supermax Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* action alleging that, by restricting his ability to purchase "Islamically permissible"

food items from the commissary, Defendant Deputy Warden James Shipman ("Shipman") violated his constitutional rights as protected by 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"). *Doc. 2.*[1]

Shipman has filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Material Facts, and a Reply, arguing that Henderson's claims should be dismissed because he failed to exhaust the administrative remedies available to him at the ADC. *Docs. 12, 13, 14, 24 & 28.* Henderson has filed Responses. *Docs. 19, 20 & 21.* Thus, the issues are joined and ready for disposition.[2]

---

[1]Specifically, Henderson alleges that he is a Muslim inmate in restrictive housing with disciplinary commissary restrictions, which prevent him from purchasing halal food items. According to Henderson, due to being deprived of halal Islamic meals or adequate alternatives, he lost 29-33 pounds while in restrictive housing from November 2, 2018 through the filing of his Complaint on February 21, 2019. He alleges that Shipman violated his rights, under § 1983 and RLUIPA, by forcing him to choose between "starvation" and the free exercise of his Islamic beliefs. He names Shipman in his individual and official capacities, and seeks damages and injunctive relief. *Doc. 2 at 1-2.*

[2]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

## II. Discussion

### A. ADC Procedures Governing the Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory." *See also Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003).

3

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 14-16 §§ IV(E)-(G) ("AD 14-16").³ "If no one responds at Steps One and Two – or if the responses at those steps are dissatisfactory – an inmate may appeal to the level of ADC's 'Chief Deputy/Deputy/Assistant Director' at Step Three." *Muhammad*, 933 F.3d at 997-98.

The ADC administrative grievance policy requires that, in connection with each claim, a prisoner must "*specifically name each individual involved*," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." AD 14-16 § IV(C)(4) & (E)(2) (emphasis added). The grievance forms themselves contain these instructions to ensure prisoners are aware of them. AD 14-16, Att. 1 ("[B]e specific

---

³Shipman submitted a copy of AD 14-16 with his summary judgment papers. *Doc. 12, Ex. A*.

as to the complaint, date and place, name of personnel involved and how you were affected."). Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. AD 14-16 § IV(N); *see also* § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

### B.   Shipman's Motion for Summary Judgment

In his Motion, Shipman contends that, before initiating this lawsuit on February 21, 2019, Henderson did not fully exhaust any grievances naming him or describing his alleged failure to provide Henderson with access to halal foods while in restrictive housing. In support of his Motion, Shipman submits: (1) a Declaration, dated June 3, 2019, from Terri Grigsby, the ADC's Inmate Grievance Supervisor, *Doc. 12, Ex. B;* (2) relevant grievance documents, *id., Ex. C;* and (3) his own Declaration, *Doc. 28, Ex. 1*.

In her Declaration, Grigsby states that she found one fully exhausted grievance regarding Henderson's claims, VSM19-00477, which did not mention Shipman and was not completely exhausted until June 3, 2019, almost four months *after* Henderson filed this action. *Doc. 12, Ex. A ¶¶ 14-22*.

According to the grievance documents for VSM19-00477, Henderson filed a

Step One informal resolution on February 12, 2019, alleging that he was being "denied halal Islamic meal accommodations" while subject to commissary restrictions in restrictive housing and that, since November 6, 2018, he had lost 29 to 30 pounds. The grievance did not name any specific ADC personnel. *Id., Ex. C at 7.* On February 22, 2019, Henderson proceeded to Step Two. Warden James Gibson (a nonparty) denied his grievance, and Henderson appealed. On June 3, 2019, ADC Director Dexter Payne (a nonparty) responded: "I find that you have not specified which dietary items which you claim to be Haram (forbidden). Even so, the ADC supplies a religious diet that is both Halal and nutritionally sufficient. This diet includes some of the items you request. You are provided with an appropriate diet by the ADC without access to commissary. Your appeal is without merit." *Id., Ex. C at 4.*[4]

In response to Shipman's documentation, Henderson concedes that VSM19-00477 did not mention Shipman and was not fully exhausted until June 3, 2019. *Doc. 21 ¶¶ 21-22.* Thus, he cannot rely on VSM19-00477 to establish exhaustion of the § 1983 and RLUIPA claims he is asserting against Shipman. *See Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018) (ADC prisoner failed to exhaust

---

[4] Henderson's grievance appeal states that he was unable to eat the meals provided by the ADC because of "daily threats" that his meals "would be contaminated (poisoned) with infectious germs, body fluids, spit and/or human waste." *Doc. 12, Ex. C at 5.* He also says he "filed for halal accommodations which were originally denied and remained denied." *Id.*

administrative remedies with respect to officials that were not named or otherwise described in his grievance); *Burns,* 752 F.3d at 1137 (clarifying that a prisoner must exhaust his specific claims against each separate defendant); *Johnson*, 340 F.3d at 627 ("If exhaustion was not completed *at the time of filing*, dismissal is mandatory.") (emphasis added); *see also Mosley v. Correctional Care Solutions,* 671 Fed. Appx. 401, 402 (8th Cir. 2016) (dismissal for failure to exhaust was proper where prisoner "filed a pertinent grievance that was ultimately exhausted after he initiated this [§ 1983] action").

Instead, Henderson argues that he exhausted another grievance, VSM16-02867, regarding the ADC's failure to provide him Islamically acceptable and/or halal meal accommodations. He asserts that, because this is an "ongoing continuing free exercise issue," exhaustion of VSM16-02867 should be sufficient to exhaust the claims he has raised in this action. *Docs. 19, 20 & 21 ¶¶ 19 & 23 .*

Henderson's argument fails. His claims in this case concern an alleged constitutional violation by Shipman that began when Henderson was placed in restrictive housing on November 2, 2018. *Doc. 2 at 1.* Henderson initiated VSM16-02867 on August 23, 2016, and his Step Three appeal was decided on October 27, 2016. *Doc. 20 at 2.* This was more than two years before the events giving rise to the claims Henderson is now asserting against Shipman. A grievance from 2016

7

cannot exhaust a claim about a violation that did not take place until 2018. *See* AD 14-16 § IV(E)(1) (grievance must be submitted within fifteen days after the occurrence of the alleged incident). Furthermore, VSM16-02867 did *not* name Shipman, who was not even working at VSM during that time. *See Doc. 28, Ex. 1.* Finally, the claim raised in VSM16-02867 was that Henderson wanted to receive monthly packages with certain halal foods, which is different from his current claim that the commissary items available to him in restrictive housing do not allow access to halal foods. *See Doc. 20 at 2.*

Thus, Henderson cannot rely on VSM16-02687 to establish exhaustion of the § 1983 and RLUIPA claims he is asserting against Shipman in this action.

Because Henderson failed to exhaust the administrative remedies available to him about Shipman's alleged denial of access to Islamically permissible foods, dismissal of Henderson's claims is "mandatory." *Jones,* 549 U.S. at 211; *see Muhammad,* 933 F.3d at 1000-03 (holding that, because ADC prisoner failed to exhaust his administrative remedies on his First Amendment and RLUIPA claims about the denial of daily halal meat, district court improperly granted injunctive relief in the prisoner's favor on those claims). Accordingly, Henderson's claims against Shipman should be dismissed, without prejudice.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant's Motion for Summary Judgment (*Doc. 12*) be GRANTED, and Henderson's § 1983 and RLUIPA claims be DISMISSED, without prejudice.

DATED this 23rd day of January, 2020.

*/s/ J. Thomas Ray*
_____
UNITED STATES MAGISTRATE JUDGE